# UNITED STATES DISTRICT COURT

EASTERN  DISTRICT OF  CALIFORNIA

---oOo---

UNITED STATES OF AMERICA

v.

BRANDON PINEDA

**CRIMINAL COMPLAINT**

CASE NUMBER:

(Name and Address of Defendant)

2:07-mj--276 DAD

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **August 28, 2007**, in Solano County, in the Eastern District of California, defendant(s) did, (Track Statutory Language of Offense)

▸ **Possess at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, with intent to distribute**

in violation of Title **21**, United States Code, Section(s) **841(a)(1)**. I further state that I am a(n) Drug Enforcement Administration Special Agent and that this complaint is based on the following facts:

▸ **See Attached Affidavit in Support of Application for Criminal Complaint**

**X** Continued on the attached sheet and made a part hereof.

_____  8/29/07
Signature of Complainant   Isaac Thompson
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence

August 29, 2007    at   Sacramento, California

Date    City and State

Dale A. Drozd
U.S. Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

**FILED**

AUG 2 9 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

IN THE UNITED STATES EASTERN DISTRICT COURT
STATE OF CALIFORNIA

DEFENDANT:        Brandon PINEDA

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Isaac Thompson, being duly sworn, declare as follows:

1. I am a Special Agent of the United States Drug Enforcement (DEA) and am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. 2510(7).

2. I was hired by DEA in February, 2005, and attended the DEA Academy. The training I received prepared me for conducting a variety of narcotic investigations. In June, 2005, I was sworn as a DEA Special Agent and since then have been involved in a multitude of narcotic investigations on both Federal and State levels. I am currently assigned to the DEA Oakland Resident Office and previously was assigned to the DEA Phoenix Field Division.

3. I am participating in an investigation concerning the distribution and sale of controlled substances, specifically cocaine. The primary focus of the investigation involves the purchase of cocaine by Brandon PINEDA.

4. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and conversations with other law enforcement agents and undercover DEA SA Jesus Alvarez.

1

5. During the month of August, 2007, SA Jesus Alvarez (acting in an undercover capacity) telephonically contacted Brandon PINEDA. PINEDA is suspected to be, by the DEA and other law enforcement agencies, a cocaine distributor in the Richmond, CA area. SA Alvarez contacted PINEDA posing as a cocaine supplier. PINEDA and SA Alvarez had several recorded telephone conversations throughout the month of August, 2007. During the course of these conversations, PINEDA and SA Alvarez discussed PINEDA purchasing kilogram quantities of cocaine from SA Alvarez. During these conversations, SA Alvarez and PINEDA both spoke in code in regard to the cocaine. Based on training and experience, SA Thompson knows it is common for drug dealers to speak in coded language when referring to narcotics, in an attempt to evade law enforcement detection.

6. SA Alvarez and PINEDA agreed to meet each other on August 16, 2007, at a Chevy's restaurant located in Vallejo, CA. The purpose of the meeting was to further discuss a future cocaine transaction. During the afternoon hours of August 16, 2007, SA Alvarez and PINEDA met each other for the first time. SA Alvarez informed PINEDA that he primarily sold "coca" (code for cocaine). PINEDA informed SA Alvarez that he knew about four different people that could buy cocaine from him. PINEDA informed SA Alvarez that he had previously been paying approximately $ 16,800 per kilogram. PINEDA further informed SA Alvarez that he had also previously been selling seven to 10 kilograms of cocaine per week. PINEDA expressed his concern about the quality of cocaine SA Alvarez could provide saying that PINEDA had recently purchased poor

2

quality of cocaine from an unknown person. SA Alvarez informed PINEDA that his cocaine was guaranteed to be high quality, and if PINEDA was not satisfied with the cocaine SA Alvarez would personally take back the poor quality cocaine from PINEDA.

7. SA Alvarez informed PINEDA that if PINEDA purchased five kilograms the price would be 15,500 dollars per kilogram and if PINEDA purchased 10 kilograms, the price would drop to 15,000 dollars per kilogram. PINEDA informed SA Alvarez that he liked the price. PINEDA asked SA Alvarez how quickly SA Alvarez would be able to get 10 kilograms of cocaine from PINEDA. SA Alvarez stated that he would be able to supply PINEDA 10 kilograms every week and that after a few deals SA Alvarez could possibly credit some kilograms to PINEDA.

8. PINEDA informed SA Alvarez that next time he called SA Alvarez he would say "my people need to go to the recording studio and make some music." PINEDA stated he would then ask to reserve "hours" at the recording studio. PINEDA further informed SA Alvarez that the number of hours PINEDA requested would be code for the number of kilograms of cocaine that PINEDA would like to purchase. PINEDA informed SA Alvarez that for the first deal he would probably want to purchase at least five kilograms from SA Alvarez.

9. During the meeting SA Alvarez asked PINEDA to walk to the rear of SA Alvarez's vehicle. SA Alvarez opened the trunk of the vehicle and asked PINEDA to open a yellow bag, which was located inside the trunk. PINEDA opened the bag and observed five kilograms of cocaine. SA Alvarez closed the trunk of the vehicle and

informed PINEDA that the five kilograms had already been promised to another customer.

10. The above discussed meeting ended with SA Alvarez and PINEDA shaking hands. In addition, PINEDA informed SA Alvarez that he was going to call SA Alvarez in the near future.

11. On August 26, 2007, SA Alvarez and PINEDA spoke on the telephone and PINEDA informed SA Alvarez that he had enough money for four kilograms of cocaine. PINEDA further explained to SA Alvarez that he was still in the process of trying to get enough money to purchase five kilograms of cocaine. On August 27, 2007, in another phone conversation, PINEDA informed SA Alvarez that he was able to get enough money to purchase all five kilograms. SA Alvarez and PINEDA both agreed to complete the five kilogram drug transaction on the afternoon of August 28, 2007. It should be noted that during the telephone conversations between SA Alvarez and PINEDA the price for five kilograms was negotiated to 15,000 dollars per kilogram.

12. On August 28, 2007, SA Alvarez and PINEDA both agreed to meet each other at the Rubio's restaurant located in Vallejo, CA in order to complete the anticipated drug transaction. At approximately 4:20 P.M., SA Alvarez and PINEDA met in the vicinity of the Rubio's Restaurant. PINEDA arrived by himself driving a white colored Lexus sedan. SA Alvarez asked PINEDA if he had brought the "documents" (code word for money). PINEDA informed SA Alvarez that he did have the money and that it was located inside his Lexus. SA Alvarez told PINEDA that once he saw the money he would

4

then show PINEDA the five kilograms of cocaine. SA Alvarez informed PINEDA the cocaine was located in a vehicle containing a hidden compartment and that PINEDA could take this vehicle for a couple of hours in order to offload the cocaine. SA Alvarez further stated that he would take the money to be counted and that they could meet back with each other in a few hours. PINEDA walked SA Alvarez to the rear of the Lexus and opened the trunk. Inside the trunk SA Alvarez observed a white plastic bag containing clear plastic bags filled with United States currency. PINEDA proceeded to put the white bag containing the money into a backpack. Once the money was placed into the backpack, PINEDA gave SA Alvarez the bag and SA Alvarez took possession of the money.

13. While in possession of the bag containing the money, SA Alvarez had PINEDA follow him to the vehicle containing the five kilograms of cocaine. Once SA Alvarez and PINEDA walked to the vehicle containing the drugs, SA Alvarez opened the hidden compartment and PINEDA viewed the five kilograms of cocaine that were located inside the compartment. PINEDA informed SA Alvarez he did not want to take the vehicle, and, instead, wanted to take just the five kilograms of cocaine. Since they did not have a bag to put the five kilograms of cocaine into, SA Alvarez told PINEDA to drive the vehicle to where PINEDA's Lexus was parked so PINEDA could transfer the cocaine into the Lexus. PINEDA agreed and took possession of the van keys. PINEDA entered the driver seat of the vehicle containing the five kilograms of cocaine and closed the driver door. The vehicle had previously been disabled, so the vehicle was not able to

5

start. Shortly after PINEDA entered the driver seat of the vehicle, DEA agents and Vallejo Police Department officers placed PINEDA under arrest.

14. This affidavit contains information I believe establishes probable cause for this application. I make this affidavit in support of a complaint for the defendant in this matter, Brandon PINEDA.

15. Based on the aforementioned facts and my training and experience, there is probable cause to believe that the defendant, Brandon PINEDA, did knowingly and intentionally possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a) (1).

16. I declare under penalty of perjury that the facts contained herein are true and correct to the best of my information and belief.

_Isaac Thompson_ 8/29/07
Isaac Thompson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 29th day of August, 2007.

_Dale A. Drozd_
DALE A. DROZD
United States Magistrate

6